IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **JESSICA SCULLY, et al.** | ) | Case No. C-1-01-417 |
| | ) | |
| Plaintiffs, | ) | Judge Weber |
| | ) | |
| v. | ) | |
| | ) | |
| **HARTFORD CASUALTY INSURANCE CO.,** | ) | |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |

---

**DEFENDANT UNITED EDUCATORS RISK RETENTION GROUP, INC.'S
SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION
TO STAY ACTION PENDING ARBITRATION**

---

Christopher M. Bechhold  (0014192)
Laurie J. Nicholson  (0060138)
THOMPSON HINE LLP
312 Walnut Street, Suite 1400
Cincinnati, Ohio  45202-4089
(513) 352-6790

Attorneys for Defendant United Educators
Insurance Risk Retention Group, Inc.

## INTRODUCTION

As the Court will recall, United Educators Risk Retention Group, Inc. ("United Educators") issued an excess liability insurance policy to the University of Cincinnati, for the policy period July 1, 1998 to July 1, 1999 ("Policy"). The Policy is a specially written, manuscript policy, which is offered to various institutions of higher education in the United States. The Policy provides excess coverage for defined occurrences and includes excess automobile liability. United Educators concedes that it did not "offer" Ohio uninsured/underinsured motorist ("UM/UIM") coverage to the University of Cincinnati in connection with the issuance of the Policy, and therefore, UM/UIM coverage is implied into the Policy as a matter of law.

The Policy contains express predicate conditions that apply to any claim made by any person seeking coverage under the Policy. Two of those conditions apply here. Paragraph 17 of the Policy unambiguously states (in pertinent part) that "This Policy shall be governed by and construed in accordance with the internal laws of the State of New York . . ." Paragraph 18 of the Policy unambiguously states (in pertinent part) that "All disputes that may arise between the **Insureds** and [United Educators] in relation to this Policy, or for its breach, shall be finally settled by arbitration . . ."

Plaintiffs contend that they are Insureds under the Policy pursuant to *Scott-Pontzer*[1] and its progeny, and seek a declaration of their rights under the Policy. As a result, plaintiffs must also comply with the Policy's basic predicate conditions, including the requirements of Paragraphs 17 and 18 of the Policy. This case should therefore be stayed pending arbitration between the parties pursuant to the express language of the Policy.

---

[1] *Scott-Pontzer v. Liberty Mutual Ins. Co.*, 85 Ohio St.3d 660 (1999).

I.     **Basic Policy Conditions Fully Apply to "Implied" UM/UIM Coverage.**

United Educators' Reply Brief in support of its original Motion to Stay Action Pending Arbitration (filed August 27, 2001) cites many Ohio cases holding that predicate conditions contained in a written insurance policy fully apply to UM/UIM coverage that is "implied" into a policy when the insurer does not properly "offer" UM/UIM coverage pursuant to former Ohio Rev. Code 3937.18.  *See*, *e.g.*, *Lee-Lipstreau v. Chubb Group, Inc.*, Case No. 1:00CV3238 (N.D. Ohio June 21, 2001), affirmed on other grounds, 2003 Fed. App. 0146P (6th Cir. May 19, 2003); *Luckenbill v. Midwestern Indemnity Co.,* 2001 Ohio App. LEXIS 2463, app. dismissed, 93 Ohio St.3d 1466; *Ohio State Grange Mutual Ins. Co. v. Shimandle*, 1994 Ohio App. LEXIS 4977 (Nov. 4, 1994, Lake Cty. App.): "When coverage is implied by operation of law, it is subject to the same terms as the general liability coverage." *Id*. at *6.

Since the filing of United Educators' original Reply Brief, this rule has widely followed by many courts, most especially by the Sixth Circuit.  In *Lepley v. Hartford Acc. & Indemn. Co.*, 334 F.3d 544 (6th Cir. 2003), Lepley appealed a summary judgment granted to Hartford in Lepley's "Scott Pontzer" claim.  The trial court held that Lepley breached the policy's notice and subrogation conditions, finding that these predicate conditions applied to the implied UM/UIM coverage impressed upon the Hartford policy as a matter of law.  The Sixth Circuit <u>affirmed</u> the trial court's judgment.  After reviewing Ohio law on the question, the Court held:  "Accordingly, if an insurance policy specifies general conditions precedent that must be satisfied before an insured is entitled to any coverage, then an insured's failure to comply with those conditions precedent precludes recovery under UM/UIM coverage that arises by operation of law." *Id.* at 549.

3

The *Lepley* Court specifically cited *Cincinnati Ins. Co. v. McClain*, 2002 Ohio 1190, in support of its conclusion. In *McClain*, the appellate court granted judgment to the insurer in a "Scott-Pontzer" claim by applying the policy's express notice and subrogation provisions to the implied-at-law UM coverage impressed upon the policy at issue. On appeal, the Ohio Supreme Court remanded the case to the trial court, for a factual determination concerning any prejudice caused to the insurer by the plaintiff's breach of the policy's notice and subrogation conditions. As the Sixth Circuit noted in *Lepley*, the Ohio Supreme Court thus ". . . implicitly recognized that the appellate court was correct in finding that the notice provision was applicable despite being imposed as a matter of law." *Lepley, supra*, 334 F.3d at 549.

The Sixth Circuit reaffirmed its holding in *Lepley* only a month later, in *Clark v. Chubb Group*, 337 F.3d 687 (6th Cir. 2003). In *Clark*, the Court addressed a commercial general liability policy that, by its terms, did not provide automobile liability coverage. Assuming that the policy was subject to Ohio Rev. Code 3937.18 and its requirements of an "offer" of UM coverage, the Court again held that the policy's express predicate conditions applied to the implied UM coverage created by law. The Court noted the distinction between such basic, predicate conditions applicable to any coverage under a policy, and liability **exclusions,** which limit the liability coverage expressly granted by the policy. The Court held that fundamental predicate conditions must apply to implied coverage, just as fundamental terms such as policy limits, or definitions of who is insured, must apply. Otherwise parties with absolutely no connection to the insurer or the named insured could successfully recover under a policy's "implied" coverage.

And lest there be any doubt, the Sixth Circuit recently again reaffirmed *Lepley*, in *Walls v. Amerisure Mutual Ins. Co.,* 343 F.3d 881 (6th Cir., September 18, 2003), holding once again

that policy-wide general preconditions to coverage apply to a claim made against implied UIM coverage.

Moreover, as noted in *Lepley*, the weight of well reasoned Ohio authority holds that predicate policy conditions apply to coverage implied at law. *See*, *e.g.*, *Williams v. Allstate Indem. Co.,* 2003 Ohio 785 (2nd Dist. App.); *Heiney v. The Hartford*, 2002 Ohio 3718 (10th Dist. App.); *Knox v. Travelers Ins. Co.,* 2002 Ohio 6958 (10th Dist. App.); and, *Green v. Cincinnati Ins. Co.,* 2001 Ohio App. LEXIS 5409 (6th Dist. App., December 7, 2001).[2]

Thus, it is clear that the Policy's predicate conditions, including the express choice of law provision and the mandatory arbitration condition, apply to Plaintiffs' claim for implied UIM coverage under the Policy.

## II.     Choice of Law and Arbitration Clauses Are Not "Exclusions" From Coverage.

Plaintiffs may argue, as they did before, that the Policy's choice of law provision, and its mandatory arbitration condition, are "exclusions" from coverage, rather than the general predicate conditions they actually are. Plaintiffs may rely on language from *Scott-Pontzer* to the effect that a policy's "liability exclusions" cannot limit the scope of implied UM coverage

There is a substantive difference between general policy **conditions** which apply to all policy coverage, and an **exclusion** applicable to a particular type of coverage provided by a policy. *See, e.g., American Eagle Ins. Co. v. Rutland Area Flyers, Inc*., 949 F.Supp. 243, 249 (D.C. Vt. 1996): ". . . an exclusion 'is a means employed by the insurer to protect itself from an additional risk or hazard against which it does not wish to insure without the payment of an additional premium.'" (citation omitted)  The distinction between conditions and exclusions was explicitly recognized in *Luckenbill*, *supra*, where the appellate court held that a general, predicative condition requiring prompt notice applied to UIM coverage that was implied by law:

---
[2]  Copy attached as Exhibit 1.

> The General Assembly required insurers to offer UM/UIM liability coverage to better allocate the risks of losses occasioned by the torts of motorists who are uninsured or underinsured. When an insurer fails to offer UM/UIM coverage in a policy of automobile liability insurance, a duty to provide coverage is impressed on the policy by operation of law. The insured then has a right to UM/UIM coverage, even though he has paid no premium for it. Nevertheless, UM/UIM coverage remains a contract right, not an entitlement. If the insured then fails to satisfy the conditions the policy imposes on that right, the insured forfeits his rights under the policy to UM/UIM coverage. . . . Stated otherwise, when UM/UIM coverage is imposed by operation of law, the insured must satisfy the duties imposed on him by the policy in order to obtain the benefits of the concomitant duty to provide coverage that the law imposes on the insurer.

*Luckenbill*, *supra*, 2001 Ohio App. LEXIS 2463 at *14-15.

Here, the plain language of the Policy makes it clear that both the choice of law and the arbitration clauses are conditions placed upon any and all coverages afforded by or through the Policy. Neither clause is an "exclusion" from the Policy's express coverages.

**III.     The Policy's Choice of Law and Arbitration Conditions Are Binding on Plaintiffs.**

There is nothing "unfair" or unconscionable about requiring plaintiffs to comply with the Policy's choice of law and arbitration conditions. The choice of law clause expressly provides that New York law will apply to **all** disputes arising under the Policy. As noted above, United Educators insures universities and colleges in a number of different states, using the identical manuscript policy at issue in this case. The basic terms and conditions of the Policy are identical for all of United Educators' insureds. The parties' express choice of law provision furthers the laudable goal of consistent interpretation of the Policy. And, Ohio law follows the Restatement of Conflicts, §187 which is clear that a contract's express, unambiguous choice of law provision will be enforced. *See*, *Schulke Radio Prod., Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d

6

436 (1983); and, *Ohayon v. Safeco Ins. Co. of Ill.,* 91 Ohio St.3d 474 (2001). New York law is in accord. *See, e.g., Ins. Co. of N. America v. ABB Power Generation, Inc*., 91 N.Y.2d 180, 690 N.E.2d 1249 (N.Y. Ct. App. 1997). There, the parties to an insurance contract agreed that disputes would be arbitrated under New York law. All of the salient facts involving the claim occurred in California, but the Court of Appeals affirmed the lower courts' enforcement of the parties' express choice of law provision in the contract (including a New York "borrowing statute" concerning the timeliness of the claim).

     The parties to this Policy also agreed that arbitration, rather than litigation, will be the chosen method of dispute resolution. It is axiomatic that law and public policy strongly favor arbitration, both under federal and Ohio law. See, 9 U.S.C. §1; Ohio Rev. Code §2711.02; *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (in assessing an arbitration clause ". . . courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration . . ." and resolve any doubts in favor of arbitration.) New York law also strongly favors arbitration agreements. See, N.Y. CPLR §7501: "A written agreement to submit any controversy thereafter arising or any existing controversy to arbitration is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award. In determining any matter arising under this article, the court shall not consider whether the claim to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute." *And see*, *Smith Barney v. Luckie*, 85 N.Y.2d 193, 647 N.E.2d 1308 (N.Y. Ct. App. 1995), enforcing an arbitration agreement in customers' brokerage contracts with their brokerage firm. The dispute between the parties was whether the courts or the arbitrator must decide whether the customers' claims were timely brought, as under New York statutory arbitration law, a statute of limitation bar may be raised as

a preliminary matter in court. The Court held that enforcing the parties' choice of New York law **and** the mandatory arbitration provision requiring arbitration in New York, comported with both New York law and the Federal Arbitration Act. In *Painewebber Inc. v. Bybyk*, 81 F.3d 1193 (2nd Cir. 1996), the Second Circuit disapproved of *Luckie* **only** to the extent that it allowed the parties to litigate the statute of limitation issue. The Second Circuit held that the arbitration clause required that **all** disputes, including whether the dispute could be arbitrated, be submitted to the arbitrators for decision.

The fact that plaintiffs in this case did not "expressly agree" to the arbitration provision does not mean it does not apply to them. First, as discussed above, predicate conditions apply to claims for implied UM/UIM coverage, even when the parties who actually entered into the policy may not have foreseen the identity of any individual "insured" who may make a claim under the policy.

Second, Ohio law is clear that a non-party to a contract is bound by the contract's arbitration requirement. In *Gerig v. Kahn*, 95 Ohio St.3d 478, 482 (2002), the Ohio Supreme Court clearly held that ". . . a signatory to a contract may enforce an arbitration provision against a nonsignatory seeking a declaration of the signatories' rights and obligations under the contract." In *Gerig*, the plaintiff was a patient of Dr. Kahn's and filed a malpractice claim against him. Kahn was insured through P.I.E. Mutual. Kahn also had a contract with his employer, St. Vincent Hospital, that allegedly provided malpractice coverage for Kahn through St. Vincent's self insurance plan. Gerig filed a declaratory judgment action against St. Vincent's, seeking a declaration that Kahn was covered by St. Vincent's self insurance plan. St. Vincent's invoked the contract's arbitration provision and sought a stay of Gerig's declaratory judgment litigation pending arbitration.

8

The Ohio Supreme Court held that Gerig was bound by the arbitration provision. The Court noted that ". . . it would be inequitable to allow an interested nonsignatory to determine the forum in which an agreement is to be interpreted when the signatories previously agreed in writing to arbitrate any controversy relating to the agreement." *Id* at 482.

In addition, *Gerig* cited and relied upon *Fawn v. Heritage Mut. Ins. Co.,* 1997 Ohio App. LEXIS 2882 (June 30, 1997, Franklin App.).[3] There, Fawn sought underinsured motorist coverage from Heritage, the insurer of the owner of the vehicle she was driving at the time of the accident. The Heritage policy contained an arbitration condition. Fawn argued she was not bound by the condition because she had not signed the contract nor agreed to its terms. The appellate court held that Fawn was bound to arbitrate her coverage dispute because, if she sought the benefit of the contract (UIM coverage), she must also be bound by its burdens – compulsory arbitration.

New York law also recognizes this principal. *See, e.g., In re Arbitration between Allstate Ins. Co. and Luna,* 319 N.Y.S.2d 139, 1971 N.Y. App. Div. LEXIS 4799 (App. Div. 1971), compelling arbitration under the express terms of an uninsured motorist endorsement in the policy at issue on a claim brought by an "additional insured," whom Allstate contended was not entitled to coverage under the policy.

Plaintiffs contend they are "insureds" under the Policy, and, therefore, entitled to UIM coverage. However, plaintiffs cannot "pick and choose" which predicate conditions to coverage they will accept and which they will not. If plaintiffs seek coverage under the Policy they are bound to comply with the Policy's predicate conditions to seek coverage. These include the Policy's express choice of New York law, and the mandatory arbitration provision.

---

[3] Copy attached as Exhibit 2.

**CONCLUSION**

In the two years since United Educators' original motion for a stay pending arbitration was briefed, it has become an almost universal rule in Ohio that the Policy's basic, predicate conditions fully apply to the implied UM/UIM coverage. This Court is bound to follow the clear precedent set forth in the Sixth Circuit's trilogy of cases in *Lepley*, *Clark*, and *Walls, supra*. And, both New York and Ohio law are equally clear that plaintiffs are bound by the contracting parties' express agreement to arbitrate "all dispute" arising out of the Policy.

This Court should therefore grant United Educators' Motion to Stay Pending Arbitration.

Dated: October 20, 2003

>Respectfully submitted,
>
>/s/ Christopher M. Bechhold
>Christopher M. Bechhold  (0014192)
>Laurie J. Nicholson  (0060138)
>THOMPSON HINE LLP
>312 Walnut Street, Suite 1400
>Cincinnati, Ohio  45202-4089
>(513) 352-6790
>(513) – 241-4771
>
>Attorneys for Defendant United Educators
>Insurance Risk Retention Group, Inc.

**CERTIFICATE OF SERVICE**

     I hereby certify that a true and correct copy of the foregoing was served by regular U.S. mail, postage prepaid, this 20th day of October, 200 upon the following:

| | |
|---|---|
| Glenn V. Whitaker<br>Vorys, Sater, Seymour and Pease LLP<br>Suite 2100, Atrium Two<br>221 East Fourth Street<br>P.O. Box 0236<br>Cincinnati, Ohio  45201-0236 | Jennifer L. Kirkpatrick<br>Freund Freeze & Arnold<br>105 East Fourth St., Suite 1400<br>Cincinnati, Ohio  45202-4006 |

Ralph Gary Winters
McCaslin Imbus & McCaslin
632 Vine Street, Suite 900
Cincinnati, Ohio  45202

                                                  /s/ Christopher M. Bechhold
                                                  Christopher M. Bechhold

454143