Bonnie K. Green, etc., et al., Appellant v. The Cincinnati Insurance Co., et al., Appellees
Court of Appeals No. H-01-018

COURT OF APPEALS OF OHIO, SIXTH APPELLATE DISTRICT, HURON COUNTY

2001 Ohio App. LEXIS 5409

December 7, 2001, Decided

PRIOR HISTORY: [*1] Trial Court No. CVH 2000-0519.

DISPOSITION: Trial court's grant of defendants-appellees' motion for summary judgment was affirmed.

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff wife appealed the judgment of the Court of Common Pleas of Huron County (Ohio) which granted defendants', four insurance companies, motion for summary judgment in a wrongful death action in which the wife's husband died following a traffic accident. The trial court also denied the wife's motion for summary judgment.

OVERVIEW: Decedent died following a 1998 motor vehicle collision caused by an opposing driver. The decedent's wife was appointed administrator of his estate, and instituted a wrongful death suit against the opposing driver. Eventually, the wife settled with the opposing driver's insurer. At the time of his death, decedent's employer was insured under commercial, umbrella and general liability policies. The wife's employer maintained a commercial auto policy and a general liability insurance policy. Upon denial of the wife's claim under these various policies, the trial court held that she was not covered under these policies because she breached a contractual obligation to provide the insurers antecedent notice of settlement with the tortfeasor. The appellate court found that the notice requirement contained in a section of two of the policies was a valid precondition for coverage. Further, it was undisputed that the wife breached this precondition when she settled without notice to or consent. As to the remaining insurance policy, because the underlying commercial auto and general liability policies imposed a notice requirement, that requirement carried over to the umbrella policy.

OUTCOME: The judgment of the trial court was affirmed.

CORE TERMS: coverage, insurer, settlement, insured, notice, summary judgment, uninsured motor vehicle, lexington, motor vehicle, matter of law, precondition, tortfeasor, tentative settlement, notice requirement, insurance policies, umbrella, underinsured, dollar, underinsured motor vehicle, general liability policy, general liability, exhausted, proof of financial responsibility, underinsured motorist, automobile liability, entitled to judgment, failed to provide, umbrella policy, contractually, ineffective

LexisNexis (TM) HEADNOTES - Core Concepts:

COUNSEL: Paul M. Kaufman, for appellant.

Jan L. Roller and Richard M. Garner, for appellee Cincinnati Insurance Company.

David L. Lester and Gary S. Greenlee, for appellee Hartford Casualty Insurance Company.

JUDGES: James R. Sherck, J. Richard W. Knepper, J., Mark L. Pietrykowski, P.J., CONCUR.

OPINIONBY: JAMES R. SHERCK

OPINION: DECISION AND JUDGMENT ENTRY

SHERCK, J. This is an appeal from a summary judgment issued by the Huron County Court of Common Pleas in favor of insurers in an underinsured motorist claim made pursuant to *Scott-Pontzer v. Liberty Mutual Fire Ins. Co. (1999), 85 Ohio St. 3d 660, 710 N.E.2d 1116.* Because appellant failed to provide the contractually required notice prior to settlement with the tortfeasor, we affirm.

Ronald Green, Sr., died following a 1998 motor vehicle collision caused by David Barbour. Green's wife, appellant Bonnie K. Green, was appointed administrator of his estate and instituted a wrongful death suit against Barbour. Eventually, appellant settled with Barbour's



insurer, accepting his $100,000 policy limits n1 and executing a release of all further claims against him.

- - - - - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - - - -

n1 The parties agreed to submit the question of whether appellant might be entitled to a greater amount to the trial court. The trial court concluded that the language of Barbour's policy limited his coverage to the per person coverage of his policy. We affirmed the trial court's decision. *Green v. Barbour,* 2001 Ohio App. LEXIS 458 (Feb. 9, 2001) Huron App. No. H-00-026, unreported, reversed on other grounds *Green v. Barbour* (2001), 92 Ohio St. 3d 219, 749 N.E.2d 295.

- - - - - - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - -

[*2]

At the time of his death, Ronald Green was employed by Thomas Steel, Inc. Bonnie Green worked for Kent Sporting Goods Co. Thomas Steel was insured by appellee Cincinnati Insurance Company ("Cincinnati") with commercial, umbrella and general liability policies in effect. Kent Sporting Goods maintained a commercial auto policy with appellee Hartford Insurance Company ("Hartford") and a general liability insurance policy with appellee Lexington Insurance Company ("Lexington"). n2

- - - - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - - -

n2 Lexington Insurance Company has not filed a brief in this matter.

- - - - - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - -

After she settled with Barbour, appellant made underinsured motorist insurance ("UIM") claims against all of the employer insurers. When these claims were denied, appellant brought the suit which underlies this appeal. Appellant sought a declaration of UIM coverage under all the employer policies pursuant to *Scott-Pontzer, supra; Ezawa v. Yasuda Fire Marine Ins. Co.* (1999), 86 Ohio St. 3d 557, 715 N.E.2d 1142, and *Myers v. Safeco Ins.* [*3] *Co. of Am.,* 2000 Ohio App. LEXIS 760 (Feb. 18, 2000) Licking App. No. 99CA00083, unreported.

The matter was submitted to the trial court on stipulated facts and cross motions for summary judgment. The court concluded that the Lexington Commercial General Liability Policy of Kent Sporting Goods did not provide automobile coverage and was, therefore, not required to provide UIM coverage. The trial court determined that the remaining insurance policies did satisfy the Scott-Pontzer test for coverage. Nevertheless, the court concluded that appellant was not covered under these policies because she breached a contractual obligation to provide the insurers antecedent notice of settlement with the tortfeasor.

On these conclusions, the court denied appellant's motion for summary judgment and granted appellees'. From this judgment, appellant now brings this appeal, setting forth the following two assignments of error:

"I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING SUMMARY JUDGMENT TO DEFENDANTS, CINCINNATI INSURANCE COMPANY AND HARTFORD INSURANCE COMPANY ON THE ISSUE OF NOTICE.

"II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY REFUSING TO GRANT SUMMARY JUDGMENT IN FAVOR OF THE PLAINTIFFS-APPELLANTS[*4]."

On review, appellate courts employ the same standard for summary judgment as trial courts. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App. 3d 127, 129, 572 N.E.2d 198. The motion may be granted only when it is demonstrated

"***(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 67, 375 N.E.2d 46, Civ.R. 56(C).

The facts of this matter are stipulated. The question, then, is whether appellees were entitled to judgment as a matter of law.

Scott-Pontzer Coverage

Christopher Pontzer was killed in an automobile collision which was the result of the negligence of an underinsured motorist. After exhausting the tortfeasor's insurance coverage, Pontzer's wife and executor, Kathryn Scott-Pontzer, claimed UIM coverage under a commercial auto liability policy, as well as an[*5] umbrella/excess insurance policy issued to Pontzer's employer by Liberty Mutual. When Scott-Pontzer's wife brought suit on her claim, the trial court entered summary judgment against her, concluding that Pontzer was not a named insured and, since he was driving his private automobile at the time of the accident, was not in a "covered" vehicle.

On appeal, the appellate court concluded that Pontzer was an insured under his employer's policies, but was not entitled to coverage in this instance because he was not acting within the scope of his employment when killed.

On review, the Ohio Supreme Court first held that, absent limiting provisions, employer commercial uninsured motorists ("UM")/underinsured motorists ("UIM") coverage extends to all of a named insured corporation's employees. The same applies for corporate umbrella/excess policies which contain any element of automobile liability coverage, even if such policies do not mention UM/UIM coverage. (If UM/UIM coverage is not offered, it arises by operation of R.C. 3937.18). Moreover, if any insurance policy contains exclusions and does not expressly exclude coverage for employees acting outside the scope[*6] of their employment, then being off the job does not negate UM/UIM coverage. Indeed, with excess/umbrella policies where UM/UIM coverage is imposed by virtue of R.C. 3937.18, even language which limits coverage to an employee acting within the scope of his or her employment is ineffective because it is presumed to apply to excess liability coverage only. In Ezawa v. Yasuda Fire Marine Ins. Co., supra, the court applied Scott-Pontzer to family members of employees.

The Insurance Policies at Issue

The trial court concluded that Kent Sporting Goods' million dollar general liability policy with Lexington Insurance did not provide UIM coverage. The court premised this conclusion on the scope of the Lexington Policy, which was subject to R.C. 3937.18 as amended in September 1997, just prior to the issuance of Lexington's policy. Added in 1997, R.C. 3937.18(L) defined the "automobile liability or motor vehicle liability policy of insurance" subject to the UM/UIM statute as 1) a policy that serves a "proof of financial responsibility" pursuant to R.C. 4509.01(K), [*7] 2) an umbrella policy written as excess of an R.C. 4509.01(K) policy.

The Lexington policy, the court noted, was a general liability policy, providing coverage only for non-owned automobiles in limited circumstances. As such, the court found that it was neither a "proof of financial responsibility" policy, nor excess coverage for a "proof" policy. Therefore, the court ruled, the Lexington policy was outside the scope of Scott-Pontzer.

On appeal, appellant summarily argues that UM/UIM coverage should have been imposed on the Lexington policy "by operation of law," but fails to support this argument with any authority or reasoning. In our view, the trial court's analysis is sound. Consequently, the court committed no error in granting summary judgment to Lexington.

The remainder of the insurance policies at issue fall under one or more branches of Scott-Pontzer. Thomas Steel's Cincinnati Commercial Auto policy has $500,000 UIM coverage and its Cincinnati Umbrella Policy provides an additional million dollars excess coverage. Thomas Steel's Cincinnati General Liability and Property policy, like Kent Sporting Goods' Lexington General Liability policy, [*8]covers non-owned automobiles in limited circumstances, but was issued prior to the addition of subsection (L) to R.C. 3937.18. UIM coverage, therefore, is imposed as a matter of law. Selander v. Erie Ins. Group (1999), 85 Ohio St. 3d 541, 546, 709 N.E.2d 1161. Kent Sporting Goods' Hartford Commercial Auto Policy provides one million dollars in UIM coverage.

Notwithstanding finding Scott-Pontzer UIM coverage in the Cincinnati and Hartford policies, the trial court ultimately denied coverage. The court determined that appellee failed to provide these insurers with a contractually mandated notice of settlement prior to releasing appellee's claim against the tortfeasor.

The material portions of the Cincinnati and Hartford UM/UIM coverage provisions are identical. Both provide:

"A. COVERAGE

"1. We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle' because of 'bodily injury' sustained by the 'insured' caused by an 'accident'. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the 'uninsured motor[*9] vehicle'.

"2. We will pay under this coverage only if a. or b. below applies:

"a. The limits of any applicable liability bonds or polices have been exhausted by judgments or payments; or

"b. A tentative settlement has been made between an 'insured' and the insurer of the vehicle described in paragraph b. of the definition of 'uninsured motor vehicle' and we:

"(1) Have been given prompt written notice of such settlement; and

"(2) Advance payment to the 'insured' in an amount equal to the tentative settlement within 30 days after receipt of notification.

"***

"C. EXCLUSIONS

"This insurance does not apply to:

"1. Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in paragraph F.3.b. of the definition of 'uninsured motor vehicle'.

"***

"F. ADDITIONAL DEFINITIONS

"As used in this endorsement:

"3. 'Uninsured motor vehicle' means a land motor vehicle or trailer:

"***

"b. Which is an underinsured motor vehicle. An 'underinsured motor vehicle' means a land motor vehicle or trailer for which the sum of all liability bonds or policies applicable at the time of an 'accident' provides at least[*10] the amounts required by the applicable law where a covered 'auto' is principally garaged but their limits are less than the Limit of Insurance of this coverage."

As is frequently the case in insurance contracts, one part may take away that which another has given. Section F(3)(b) includes in the definition of an uninsured motor vehicle, an underinsured vehicle. Using this definition, section A grants coverage when either subsection 2(a) or (b) is satisfied. Section 2(a) grants UM coverage to one injured by an uninsured vehicle once the bond or policy limits applicable to that vehicle have been exhausted. However, section 3 excludes coverage to claims settled without the insurer's consent, unless it is a settlement made with the insurer of an underinsured motor vehicle as defined in F(3)(b).

Here, the tortfeasor was underinsured and his liability insurance exhausted, thus satisfying section A(2)(a). David Barbour's liability insurance was $100,000, which satisfied the state minimum and is less than the coverage limits on either the Thomas Steel Cincinnati policies or the Kent Sporting Goods Hartford policies. Applying the plain contractual language of the Cincinnati and Hartford[*11] policies, appellant would be entitled to UIM coverage.

Both insurance policies, however, contain a further provision. Section E(2)(c) provides:

"E. CHANGES IN CONDITIONS

"The CONDITIONS of the policy for OHIO UNINSURED MOTORISTS INSURANCE are changed as follows:

"***

"2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS is changed by adding the following:

"***

"c. A person seeking Uninsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the 'insured' and the insurer of the vehicle described in paragraph F.3.b. of the definition of 'uninsured motor vehicle' and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in paragraph F.3.b. of the definition of 'uninsured motor vehicle'."

A subrogation clause, such as the one contained in section E(2)(c) of these policies, is a valid and enforceable precondition to an insurer's duty to provide underinsured motorist coverage. *McDonald v. Republic-Franklin Ins. Co.* (1989), 45 Ohio St. 3d 27, 29, 543 N.E.2d 456, citing *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St. 3d 22, 521 N.E.2d 447,[*12] paragraph four of the syllabus.

Appellant insists that the concept of notice of settlement to, and consent for settlement from, a UIM

insurer is "antiquated *** and *** eroding." Yet, she provides us with no persuasive authority to negate the holdings of Bogan and McDonald. n3 Neither does she distinguish this case from Bogan and McDonald. Consequently, we must conclude, as did the trial court, that the notice requirement contained in section E(2)(c) of the Cincinnati and Hartford policies was a valid precondition for UIM coverage. It is undisputed that appellant breached this precondition when she settled with Barbour's insurer without notice to or consent from Cincinnati and Hartford.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n3 The cases appellant cites are clearly distinguishable. *Aufdenkamp v. Allstate,* 2000 Ohio App. LEXIS 184 (Jan. 19, 2000) Lorain App. No. 98CA007269, unreported (insurer had already denied UIM coverage prior to settlement when *Savoie v. Grange Mutual* (1993), 67 Ohio St. 3d 500, 620 N.E.2d 809, revived the claim); *Bakos v. Insura Prop. & Cas. Ins.* (1997), 125 Ohio App. 3d 548, 709 N.E.2d 175 (unreasonable to require settlement notice after insurer has denied the claim); *West American Ins. Co. v. Hardin* (1989), 59 Ohio App. 3d 71, 571 N.E.2d 449 ("immediate notice" means within a reasonable time. To show notice unreasonable, insurer must show prejudice); *Ruby v. Midwestern Indemnity Co.* (1988), 40 Ohio St. 3d 159, 532 N.E.2d 730 ("prompt notice" equates to reasonable notice: destruction of subrogation is unreasonable); *Fillhart v. Western Reserve Mut. Ins. Co.* (1996), 115 Ohio App. 3d 200, 684 N.E.2d 1301 (prejudice presumed when policy notice requirements not met); *Moraine Materials Co. v. Cardinal Operative Co.,* 1998 Ohio App. LEXIS 5387 (Nov. 13, 1998) Montgomery App. No. CA 16782, unreported (not an insurance case); *Weiker v. Motorists Mut. Ins. Co.* (1998), 82 Ohio St. 3d 182, 694 N.E.2d 966 (UIM insured who is not a party to a settlement does not violate policy notice requirement); *Gibson v. State Farm Mut. Ins. Co.,* 123 Ohio App. 3d 216, 1997 Ohio App. LEXIS 3704, 704 N.E.2d 1 (Aug. 22, 1997) Clark App. No. 95CA107, unreported (settlement by one who is not an "insured" does not count against one not a party to the settlement); *Howard v. State Auto Mut. Ins.,* 2000 Ohio App. LEXIS 948 (Mar. 14, 2000) Franklin App. No. 99AP577, unreported (ambiguous notice requirements ineffective).

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - -

[*13]

The remaining policy at issue is Thomas Steel's Cincinnati Umbrella Coverage policy. Appellant argues that since UIM coverage arises, in this instance, as a matter of law, no notice requirement is imposed under this policy. This argument fails. Section B(12) grants coverage under this policy, "only for such hazards for which coverage is provided by *** 'underlying insurance'." Since the underlying commercial auto and general liability policies imposed a notice requirement, that requirement carries over to the umbrella policy under this provision.

We conclude, therefore, that the trial court's analysis of this matter was correct. Even though operation of Scott-Pontzer principles result in UIM coverage for this claim, appellant's failure to meet policy preconditions ultimately deny her recovery. Accordingly, the trial court properly granted summary judgment in favor of appellees and, concomitantly, denied summary judgment to appellant. Accordingly, both of appellant's assignments of error are not well-taken.

On consideration whereof, the judgment of the Huron County Court of Common Pleas is affirmed. Costs to appellant.

JUDGMENT AFFIRMED.

A certified copy of this entry[*14] shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.

James R. Sherck, J.

Richard W. Knepper, J.

Mark L. Pietrykowski, P.J.

CONCUR.