**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **JESSICA SCULLY, et al.** )<br>)<br>      **Plaintiffs,**  )<br>)<br>**v.**   )<br>)<br>**HARTFORD CASUALTY INSURANCE** )<br>**CO., et al.**  )<br>)<br>      **Defendants.**  ) | **Case No. 1:01cv417**<br><br>**Judge Weber** |

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO
MOTION OF UNITED EDUCATORS INSURANCE RISK GROUP, INC. TO STAY
ACTION PENDING ARBITRATION**

**I.      Preliminary Statement**

Plaintiff Jessica Scully and her daughter Alexandra have suffered damages of more than $10 million as a result of the negligence of others. The tortfeasors responsible for her injuries did not have enough insurance to cover those damages. Thus, in order to be made whole, Plaintiffs must rely upon underinsured motorist protection provided under an Excess Liability Insurance Policy (the "Policy") issued by United Educators Risk Retention Group, Inc. ("United Educators") to the University of Cincinnati (the "University"), Jessica's employer at the time of her injury. The Policy does not provide underinsured motorist coverage explicitly. However, United Educators concedes that $25 million in underinsured motorist coverage is imputed into the Policy by operation of Ohio Revised Code section 3937.18. (See United Educators' Amended Reply Brief In Support of Its Motion to Stay Action Pending Arbitration at 5.)

Having so conceded, United Educators now asks the Court to stay proceedings and order that Plaintiffs' claims be sent to New York to be arbitrated under New York law. However, the arbitration and choice of law clauses contained in the Policy do not carry over to the imputed underinsured motorist coverage. If they did, they would effectively exclude all such coverage from the Policy and contravene Ohio's public policy of ensuring that innocent tort victims are compensated regardless of whether the tortfeasor carries sufficient insurance. And exclusions that contravene Ohio public policy are void.

Moreover, the arbitration clause is unconscionable. It provides that all claims relating to the Policy will be heard before three arbitrators, one each selected by the University and United Educators, and a third named by the first two. This process cannot result in a fair hearing of Plaintiffs' claims because both the University and United Educators have an overwhelming interest in selecting arbitrators predisposed to deny coverage to Plaintiffs: United Educators to avoid reimbursing Plaintiffs for millions of dollars in damages, and the University to avoid a commensurate increase in its insurance premiums.

II.  **Law and Argument**

   A.  **The Arbitration and Choice of Law Provisions in the Policy Do Not Apply to the Underinsured Motorist Coverage that Arises by Operation of Law.**

In Scott-Pontzer v. Liberty Mutual Fire Insurance Co., 710 N.E.2d 1116, 1120 (Ohio 1999), the Ohio Supreme Court held that when underinsured motorist coverage is implied into an excess liability policy, "any language [in the policy] restricting insurance coverage was intended to apply solely to excess liability coverage and not for purposes underinsured motorist coverage." Thus, coverage exclusions do not apply to

2

underinsured motorist coverage imputed into a liability policy by operation of law. See Demetry v. Kim, 595 N.E.2d 997, 999-1002 (Ohio Ct. App. 1991); see also Lepley v. Hartford Acciden & Indem. Co., 334 F.3d 544, 547-48 (6th Cir. 2003) (distinguishing exclusions from conditions precedent).

United Educators contends, however, that the arbitration and choice of law clauses apply to the imputed underinsured motorist coverage because they are conditions precedent to any coverage under the Policy. "[A] condition precedent is one that is to be performed before the agreement becomes effective. It calls for the happening of some event, or the performance of some act, after the terms of the contract have been agreed on, before the contract shall be binding on the parties." Mumaw v. Western & Southern Life Ins. Co., 119 N.E. 132, 135 (Ohio 1917). It is uncontested that conditions precedent apply to underinsured motorist coverage that arises by operation of law. See Walls v. Amerisure Mut. Ins. Co., 343 F.3d 881, 884-85 (6th Cir. 2003); Clark v. Chubb Group of Ins. Cos., 337 F.3d 687, 696 (6th Cir. 2003); Lepley, 334 F.3d at 549.

Indeed, United Educators cites to a plethora of cases where provisions requiring notice to the insurer, subrogation of rights, or the initiation of claims within a certain time period were found to apply to underinsured motorist coverage created by operation of law. See, e.g., Lepley, 334 F.3d at 549-550 (notice and subrogation); Duriak v. Globe Am. Cas. Co., 502 N.E.2d 620, 622-23 (Ohio 1986) (one year limitation on claims), overruled on other grounds, Miller v. Progressive Cas. Ins. Co., 635 N.E.2d 317 (Ohio 1994); Luckenbill v. Midwestern Indemn. Co., 758 N.E.2d 301, 305 (Ohio Ct. App. 2001) (notice and subrogation). This is unsurprising because such provisions are

3

conditions precedent requiring an affirmative act before the insured is entitled to payment: the giving of notice, an agreement to subrogate, or filing of a claim within the appropriate time. However, the arbitration and choice of law clauses do not require the performance of any act and are not conditions precedent to coverage.

First, the arbitration clause requires that "[a]ll disputes that may arise between the Insureds and us in relation to th[e] Policy, or for its breach," shall be sent to arbitration. This language, which requires arbitration only in the event that a dispute "may" arise, does not require the performance of any affirmative act. However, in arguing that the arbitration clause is a condition precedent, United Educators implies that the affirmative act of submitting to arbitration is required before any claimant under the Policy is entitled to coverage. In other words, United Educators appears to assert that it denies every claim, regardless of the its merits, and refuses to make payment until the claimant submits to arbitration. Such a policy would breach United Educators' duty to pay claims in good faith. See Zoppo v. Homestead Ins. Co., 644 N.E.2d 397 (Ohio 1994) ("An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor.") (syllabus ¶1). United Educators cannot mean to argue this interpretation of the arbitration clause.

Second, not only is the choice of law clause not a condition precedent because it does not require the performance of any affirmative act, but it effectively excludes any underinsured motorist coverage from the Policy. Under New York law, because the Policy is silent on the issue of underinsured motorist coverage, such coverage in the amount of $50,000 would be imputed into the Policy. See N.Y. Ins.

Code § 3420(f)(1). However, that coverage would not benefit Plaintiffs because they have already recovered $2 million from the tortfeasors' insurers.[1] Moreover, Plaintiffs seek coverage pursuant to another holding of Scott-Pontzer, in which the Ohio Supreme Court broadly interpreted the definition of an "insured" in a liability policy to cover the employees of the insured employer. 710 N.E.2d at 1119. No New York court has construed employer's insurance policies so broadly. Therefore, if Plaintiffs' claims are construed under New York law, Plaintiffs will lose precisely the claims that the Scott-Pontzer court held could not be abridged.[2] Such a policy exclusion does not apply to insurance coverage imputed by operation of law. See Demetry, 595 N.E.2d at 999-1002.

Additionally, applying the arbitration and choice of law clauses to the imputed underinsured motorist coverage would contravene the legislative purpose behind section 3937.18: "to place the injured policyholder in the same position, with regard to the recovery of damages, that he would have been in if the tortfeasor had possessed liability insurance." Miller, 635 N.E.2d at 320. In Miller, the Ohio Supreme Court held that a provision requiring the insured to file suit or demand arbitration within one year after an accident was invalid because it contravened public policy:

> In Ohio, the statute of limitations for bodily injury actions is two years. Thus, appellants, who apparently claim to have suffered bodily injury as a result of the accident, were entitled to a statutory two-year period to

---

[1] Of course, whether New York law imputes underinsured motorist coverage is irrelevant in light of United Educators' concession that the Policy provides $25 million in underinsured motorist coverage. Nevertheless, Plaintiffs include this analysis for completeness.

[2] Indeed, exactly how United Educators would have the arbitrators apply New York law is somewhat unclear given United Educators' concession that section 3937.18 requires the Policy to include $25 million in underinsured motorist coverage. Apparently, United Educators would expect the arbitrators first to apply Ohio law as embodied by section 3937.18 and ignore New York Insurance Code section 3420(f)(1). Then, the arbitrators would be expected to ignore Scott-Pontzer and instead rely on the fact that New York courts have not interpreted insurance contracts as expansively as the Ohio Supreme Court. The necessary results of this gross inconsistency in United Educators' position are addressed later in this memorandum.

5

>commence an action for bodily injury against the tortfeasor. Conversely, the time-limitation provision in appellants' policy provided a lesser period of time for appellants to initiate an action or proceeding against appellee to recover benefits for the injuries they suffered at the hands of the tortfeasor. As a result of the policy provision, appellants were not placed in the same position, with regard to the recovery of damages, that they would have enjoyed had the tortfeasor been insured. As a practical matter, the effect of the policy provision was to deprive appellants of the coverage required by [Ohio Revised Code §] 3937.18.

Id. Analogously, if Plaintiffs are bound by the arbitration and choice of law provisions in the Policy, they will be in a worse position than they would have enjoyed had the tortfeasors responsible for their injuries been adequately insured. Specifically, they will be arbitrating in New York under New York law, and "the effect of the policy provision[s will] be to deprive [them] of the coverage required by [section] 3937.18."

### B. The Policy's Arbitration Provision Is Unconscionable and Unenforceable.

The Policy's arbitration clause is unconscionably unfair to Plaintiffs. Plaintiffs were not involved in the negotiation of the arbitration provision, and, if the provision is enforced, they will have no say in the selection of the arbitrators. Rather, the Policy would empower United Educators and the University to choose two of the three arbitrators directly, with the third arbitrator named by agreement of the first two. Both United Educators and the University are unquestionably opposed to any recovery by Plaintiffs: United Educators does not want to reimburse Plaintiffs' for their damages, and the University does not want to pay the higher premiums that would result from such a payment. This unfair framework for selecting arbitration cannot stand under either Ohio or New York law. See State Farm Mut. Auto. Ins. Co. v. Poyhanya, Nos. 92AP-40, 93AP-41, 1992 WL 249858, at *4 (Ohio Ct. App. Sept. 29, 1992) (attached to Mem. Opp. as Exh. F) ("arbitration provisions that make low awards favorable to the

insurer binding yet do not insurer to awards which are higher [are] patently unfair, unconscionable, and unenforceable"); Matter of Cross & Brown Co., 4 A.D.2d 501 (N.Y. App. 1957) (holding invalid employment contract requiring arbitration of disputes by board of directors of employer).

In arguing to uphold the arbitration provision, United Educators emphasizes that both Ohio and New York law favor arbitration. That is true, but courts in both Ohio and New York ignore that preference when dealing with a plain unconscionable arbitration clause of the sort involved here.[3] See, e.g., Schaefer v. Allstate Ins. Co., No. 90AP-178, 1991 WL 19175, at *3 (Ohio Ct. App. Feb. 12, 1991) (attached to Mem. Opp. as Exh. E) ("Finding the binding portion of the clause to be unconscionable under the circumstances because it confers an unfair advantage upon the insurer, we refuse to recognize the provision that the arbitration award shall be binding if it does not exceed $12,500, with the result that all arbitration awards shall be appealable de novo."); Hanover Ins. Co. v. Losquadro, 157 Misc. 2d 1014, 600 N.Y.S.2d 419 (N.Y. Sup. Ct. 1993) (finding unconscionable a provision allowing de novo trial after arbitration where award exceeded $10,000).

### C. United Educators Has Conceded That Ohio Law Applies to Plaintiffs' Claims.

The Court has asked the parties to address the question of whether Ohio and New York law applies to the Policy. United Educators has taken wildly inconsistent positions on this issue. On one hand, it concedes that "because the Policy provides $25

---

[3] United Educators also contends that the arbitration clause withstands scrutiny because it is not unconscionable with respect to United Educators and the University. However, United Educators cites no authority for the proposition that the clause need only be conscionable with respect to United Educators and the University. Indeed, that logic would give an employer and its insurer the perverse incentive to include arbitration clauses in their policies with provisions, like those here, that essentially deny coverage to any third-party making a claim under the

million in excess automobile coverage, pursuant to § 3937.18, United Educators is required to provide underinsured motorist coverage under its Policy in the same amount." (United Educators' Amended Reply Brief in Support of Its Motion to Stay Action Pending Arbitration at 5.) On the other, it contends that "Plaintiffs' claim for underinsured motorist benefits is subject to binding arbitration under New York law." (Id. at 6.) In other words, United Educators argues that Ohio law applies to only one issue – whether underinsured motorist coverage is imputed into the Policy – while New York law applies to all others.

This inconsistency is a purely cynical attempt to force Plaintiffs' claims to proceed to arbitration without proper consideration by the Court. Disputes over the application of a statute to a relationship between parties are not subject to contract clauses requiring arbitration of all disputes arising out of that contract. See Ervin v. Am. Funding Corp., 625 N.E.2d 635, 637 (Ohio Ct. App. 1993). Thus, the issue of whether section 3937.18 requires the Policy to provide underinsured motorist coverage is not subject to the Policy's arbitration clause. If United Educators were to contest that issue, it would have to do so in a motion to dismiss. To decide such a motion, the Court would have to rule on substantive issues, such as the application of the choice of law clause. To avoid the Court's consideration, United Educators instead concedes that section 3937.18 applies to the Policy. But because applying Ohio law to the Policy across the board would require it to reimburse Plaintiffs for their injuries, United Educators makes an about-face and now contends that New York law applies to all other aspects of the Policy. Ohio law does not permit that sort of gamesmanship.

---

policy. In United Educators' world, third parties could not challenge those provisions, and the Scott-Pontzer decision would be rendered meaningless.

8

Rather, United Educators, having taken the position that Ohio law applies in order to achieve the perceived benefit of avoiding the Court's scrutiny, is now bound by that position.[4]  See 42 Ohio Jur. 3d Estoppel and Waiver § 56 (2003) ("It is a well-recognized rule in Ohio that a party cannot be permitted to occupy inconsistent positions or to take a position in regard to a matter which is directly contrary to or inconsistent with one previously assumed by him. Where a party has an election to adopt one of two inconsistent courses and takes decisive action with knowledge of his rights and the facts, his election is determined, and he is estopped.")

---

[4] Even if the Court determines that United Educators should not be bound by its concession, then traditional choice of law principles nevertheless dictate that Ohio law applies.  "An action by an insured against his or her insurance carrier for payment of underinsured motorist benefits is a cause of action sounding in contract." Ohayon v. Safeco Ins. Co. of Illinois, 747 N.E.2d 206, 207 (Ohio 2001) (syllabus ¶1).  To determine which state's laws apply to a contract, a court must apply the choice of law factors set forth in section 188 of the Restatement of the Law 2d, Conflict of Laws (1971).  Id. (syllabus ¶2).  These factors include "the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation, and place of business of the parties."  Id. at 209.  Applying those factors here, it is clear that Ohio law applies to the Policy and Plaintiffs' claims.  While the place of contracting and place of negotiation are unknown, the Policy is performed in Ohio, it insures the University of Cincinnati, which is located in Ohio, and it was entered into by United Educators, a Vermont corporation doing business in a number of states including Ohio, and the University of Cincinnati, which is located and has its principle place of business in Ohio.  Balancing these factors, it is clear that Ohio has a greater interest than any other state in the resolution of disputes arising under the Policy.  Therefore, Ohio law controls.

**III.     Conclusion**

For the foregoing reasons, United Educators' motion to stay pending arbitration should be denied.

                                                      Respectfully submitted,

                                                      s/ Glenn V. Whitaker
                                                      Glenn V. Whitaker  (0018169)
                                                      Vorys, Sater, Seymour and Pease LLP
                                                      Suite 2100, Atrium Two
                                                      221 East Fourth Street
                                                      P.O. Box  0236
                                                      Cincinnati, Ohio  45201-0236
                                                      Telephone:  (513) 723-4608
                                                      Facsimile:   (513) 723-4056

                                                      Trial Attorney for Plaintiffs,
                                                      Jessica and Alexandra Scully

**OF COUNSEL:**

Jeffrey A. Miller (0068815)
Vorys, Sater, Seymour and Pease LLP
Suite 2100, Atrium Two
221 East Fourth Street
P.O. Box  0236
Cincinnati, Ohio  45201-0236
Telephone:  (513) 723-4608
Facsimile:   (513) 723-4056

R. Jay Hardin
Smith, Haughey, Rice & Roegge
202 E. State Street
P.O. Box 848
Traverse City, MI  49685-0848
(616) 929-4878

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing were served on:

| | |
|---|---|
| BRUCE D. BRATTAIN<br>Brattain & Minnix<br>151 N. Delaware Street, #760<br>Indianapolis, Indiana 46204 | JENNIFER L. KIRKPATRICK<br>Freund Freeze & Arnold<br>105 East Fourth St., Suite 1400<br>Cincinnati, OH  45202-4006 |
| RICHARD ELLISON<br>22 West 9th Street<br>Cincinnati, Ohio 45202 | CHRISTOPHER M. BECHHOLD<br>Thompson, Hine LLP<br>312 Walnut St.<br>14th Floor<br>Cincinnati, Ohio 45202-4089 |
| JAMES BROCKMAN<br>Lindhorst and Dreidame<br>312 Walnut Street, Suite 2300<br>Cincinnati, Ohio 45202-4091 | RALPH GARY WINTERS<br>McCaslin Imbus & McCaslin<br>632 Vine Street Suite 900<br>Cincinnati, OH 45202 |

      via regular U.S. mail on this 3rd day of November, 2003.

                                    s/ Glenn V. Whitaker
                                    Glenn V. Whitaker

11/03/2003 - 461281